# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| KATHY L. THOMPSON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO.: 1:15-CV-295-TLS |
| CAROLYN COLVIN, Acting Commissioner of the Social Security Administration, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

The Plaintiff, Kathy L. Thompson, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. She claims that she is unable to work due to a combination of physical and mental conditions.

## PROCEDURAL HISTORY

This case has a procedural history spanning over a decade. In September 2004, the Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging an onset date of December 20, 1998. (R. 553.) The next month, the Plaintiff filed an application for Disability Insurance Benefits ("DIB"). (R. 515.) The Plaintiff's claims for SSI and DIB were denied in January 2005 and upon reconsideration in March 2005. (R. 44–48, 51–57.) Thereafter, a hearing was held before the ALJ in November 2005, who issued an unfavorable decision in February 2006. (R. 563.) Upon review before the Appeals Council ("AC") in December 2006, the AC vacated the ALJ's decision and remanded because the recording of the hearing was inaudible. (R. 540, 548.)

A hearing was held before a different ALJ in April 2007, who issued an unfavorable decision in September 2007. (R. 19–33, 523, 710–30, 803.) The Plaintiff sought review of the ALJ's 2007 decision by the AC, which denied review in August 2008, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Then, the Plaintiff sought judicial review under 42 U.S.C. § 405(g) in this District. In September 2009, Magistrate Judge Cosbey reversed the ALJ's decision for not adequately considering the Plaintiff's doctor's opinions regarding her mental limitations, as well as non-severe impairments. (R. 791–92.) The Magistrate remanded the case for further administrative proceedings.

In January 2010, the ALJ held a hearing pursuant to the Magistrate Judge's remand order. In September 2010, the ALJ issued a partially favorable decision in which he found that the Plaintiff was not disabled through March 13, 2008, but was disabled after that date. (R. 741–53.) The Plaintiff sought review of the ALJ's 2010 decision by the AC, which denied review in March 2012, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Again, the Plaintiff sought judicial review under 42 U.S.C. § 405(g) in this District, but in February 2013, the parties jointly stipulated to remand pursuant to sentence four of 42 U.S.C. § 405(g). (R. 953.) In March 2014, the AC reversed the ALJ and directed him to "reevaluate the claimant's mental impairments at step two and continue through the sequential evaluation process; reassess the claimant's mental/physical RFC and obtain supplemental vocational expert ("VE") testimony to assist in determining what jobs exist in significant numbers for the claimant." (R. 950–52.) The AC remanded the case for further administrative proceedings.

In August 2014, the Plaintiff appeared for a hearing before the ALJ, who issued an unfavorable decision in September 2014. The ALJ again found that the Plaintiff was not disabled through March 13, 2008, but was disabled after that date. (R. 916–27.) The Plaintiff sought

review of the ALJ's 2014 decision from the AC, which denied review in August 2015, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## THE ALJ'S FINDINGS

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also* 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *id.* § 423(d)(2)(A) (requiring an applicant to show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments.

An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments were degenerative arthritis of the right knee, bilateral ankle pain and instability status post surgeries, and obesity, all of which caused more than minimal limitation to her ability to perform work activities. But the ALJ concluded that the Plaintiff's mental impairments of depression and anxiety/panic disorder were not severe impairments

3

because they caused no more than minimal limitations in her ability to perform basic work-related activities. In accordance with the AC's Remand Order, the ALJ explained that Dr. Link's assessment of the Plaintiff, wherein he found that she was "functioning at a moderate level of impair[ment]," was not given great weight. (R. 920.) First, Dr. Link's statements were not based on medical sources, but on the Plaintiff's subjective statements. Second, the Plaintiff's inability to "attend for less than 15 minutes" was not contradicted by Dr. Link's report itself, which showed that the Plaintiff had fair attention capacity. (*Id.*) Third, Dr. Link's use of the words "might" and "moderate" to describe the Plaintiff's limitations were not controlling. Indeed, Dr. Link's own description of those activities that the Plaintiff could undertake, coupled with additional evidence in the record,[1] suggested that the use of those words did not elevate the Plaintiff's mental conditions to severe. Finally, the GAF score of 59 did not elevate the Plaintiff's mental impairment to a moderate limitation because it took into account "psychological, social, and occupational functioning," the latter of which Dr. Link noted were more impaired. (R. 921.) Of the four broad functional areas that the regulations set out for evaluating mental disorders, the Plaintiff experienced only mild limitations in the first three—activities of daily living, social functioning, and concentration, persistence, or pace—and no episodes of decompensation, which rendered her mental impairments nonsevere.

At step three, the ALJ considered whether the Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's degenerative arthritis of the right knee,

---

[1] In particular, the ALJ relied upon the function report that the Plaintiff's sister wrote. (R. 921.)

bilateral ankle pain and instability status post surgeries, and obesity did not meet or equal a listed impairment.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to perform sedentary work, which meant only occasional stooping, balancing, and crouching. The Plaintiff could not perform work that required climbing, crawling, or kneeling, and could not do work outside in cold or wet weather. In making these findings, the ALJ incorporated by reference the weighting of evidence from its 2010 decision. As such, the RFC in the 2014 decision was unchanged from the RFC that the ALJ adopted in his 2010 decision, which meant that there were no mental limitations included in the ultimate RFC. However, the ALJ noted that, even when he gave great weight to Dr. Link's characterization of the Plaintiff's mental impairments, the ALJ's RFC determination remained unchanged. This was so because the Plaintiff's "level of functional limitation [wa]s not associated with an inability to perform all unskilled work" when the RFC included mental impairments.

At the final step of the evaluation, the ALJ determined that the Plaintiff could not perform any past relevant work. However, because of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there were a significant number of jobs in the national economy that the Plaintiff could perform. These jobs included addresser, document preparer, and charge account clerk. These jobs were typically unskilled and performed at the sedentary level.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand

6

is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

The Plaintiff presents three issues for review. First, the Plaintiff argues that the ALJ failed to follow the AC's remand order regarding the Plaintiff's mental impairments. (Pl.'s Br. 13–18, ECF No. 17-1.) Second, the ALJ's evaluation of the Plaintiff's RFC was erroneous because it was unchanged since the 2010 decision. (*Id.* at 18–22.) Third, the ALJ failed to follow SSR 96-7p[2] and made erroneous credibility findings regarding opinion evidence. (*Id.* at 22–25.)

The Court finds that these arguments center around two separate issues. One is whether the ALJ appropriately considered the evidence of the Plaintiff's mental impairments, the most central of which was Dr. Link's opinion. An improper assessment of the Plaintiff's mental impairment evidence would have undermined the ALJ's ultimate RFC determination. The other issue is whether the ALJ properly considered new opinion evidence from Dr. Freeman, Dr. Borgenheimer, and Dr. Halstead, when deciding upon issues of credibility.

Upon reviewing the record, the Court finds that the ALJ considered all the evidence and gave appropriate consideration to the combined effects of the Plaintiff's mental impairments. An ALJ is obliged to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

> The ALJ must determine an individual's RFC, or what an individual can still do despite his or her limitations, based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. In making a

---

[2] SSR 96-7p was replaced with a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, which more closely follows the Agency's regulatory language regarding symptom evaluation. *See* SSR 16-3P, 2016 WL 1119029, at *1 (Mar. 16, 2016). The substantive aspects of SSR 16-3p do not apply retroactively, so SSR 96-7p still governs this case.

> proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling. However, a determination need not contain a complete written evaluation of every piece of evidence.

*Murphy v. Colvin*, 759 F.3d 811, 817–18 (7th Cir. 2014) (quotation marks, brackets, and citations omitted). To begin, the Plaintiff claims that the ALJ failed to follow the AC's remand order because the ALJ gave insufficient weight to Dr. Link's opinion and too much weight to the state agency psychologists. This argument mischaracterizes the AC's remand order, which required the ALJ to *explain* why Dr. Link's opinion deserved the weight it received. (R. 951–52.) It did not direct the ALJ to *expressly find* that Dr. Link's opinion deserved greater weight. The ALJ followed this directive.

The Plaintiff argues that Dr. Link's opinion was entitled to great weight because of the statement about the Plaintiff's attention span, the fact that the entirety of the opinion was well-reasoned and not subjective, and the high GAF score. The ALJ explained why Dr. Link's report was not entitled to much weight. With regard to Dr. Link's opinion as to the Plaintiff's attention span, a notation stated that "She was able to attend for periods of less than fifteen minutes. Concentration was fair. She was able to complete all tasks." (R. 617.) The ALJ found that this notation, in and of itself, did not show that the Plaintiff suffered from severe mental limitations. To corroborate this conclusion, the ALJ cited a third party report from the Plaintiff's sister that suggested her disability was mostly caused by physical, rather than mental, impairments. The ALJ also cited the state agency psychologists' views, which the remand order did not proscribe him from considering, as further support for this conclusion. Although the Plaintiff disputes the ultimate conclusion to be gleaned from these reports, the ALJ's reasons for his conclusion were explained and reasoned. The Court cannot say this was error.

8

Similarly, the Plaintiff argues that Dr. Link's opinion was entitled to greater weight because, on the whole, it was well-reasoned and used objective evidence to show that the Plaintiff had mental impairments. As such, the ALJ's focus on the words "might" and "moderate" in Dr. Link's opinion was too narrow and failed to account for the "evidence as a whole." (Pl.'s Br. 15–16.) But Dr. Link's conclusion that the Plaintiff was "functioning at a moderate level of impaired" (R. 619), does not lead to an "unequivocal" conclusion that the Plaintiff had a severe mental impairment. (Pl.'s Br. 16). In fact, the remainder of that sentence reads "functioning at a moderate level of impaired *in terms of work related activities in respect to her overall level of function*" (R. 619 (emphasis added)), which does not show that Dr. Link assessed the Plaintiff with a moderate *mental* impairment. The context from the rest of Dr. Link's opinion furthers such a conclusion. The Court cannot say that the ALJ's discussion of these words amounted to "cherry-picking." *Denton*, 596 F.3d at 425.

The argument regarding Dr. Link's Global Assessment of Function (GAF) score of 59 leads the Court to a similar conclusion. As the Seventh Circuit has stated:

> GAF scores . . . are "useful for planning treatment," and are measures of both severity of symptoms *and* functional level. . . . Because the "final GAF rating always reflects the worse of the two," . . . the score does not reflect the clinician's opinion of functional capacity. Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score."

*Id.* (quotation marks and citations omitted). The fact that Dr. Link issued a GAF score did not compel the ALJ to find that the Plaintiff suffered from a significant mental impairment. Instead, the ALJ properly considered the whole of Dr. Link's opinions, including the GAF score, to support his ultimate finding that the Plaintiff had no significant mental impairments.

Whether or not the ALJ gave sufficient explanation for the weight afforded Dr. Link's opinion, the Plaintiff argues that the ALJ's sequential determination was nonetheless erroneous.

To support this argument, the Plaintiff notes that the AC's remand ordered the ALJ to reassess the RFC (both mental and physical limitations), but the ALJ merely adopted the RFC from the 2010 decision because the higher court did not expressly say there was error. The Court is not so persuaded. The only additional evidence to be considered in the decision was the Plaintiff's testimony as to her mental impairments, which the ALJ noted presented no new evidence. As such, the ALJ articulated specific reasons "supported by the record" for why the Plaintiff's assertions about her symptoms were not entirely credible. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). Furthermore, the ALJ stated that

> even if [he] would give great weight to Dr. Link's very general characterization of the claimant's limitations as "moderate, [he] still would consider the same body of additional evidence that has already been considered in this decision, and would arrive at work-related functional restrictions in the RFC that approximate the assessment made by the State agency consultants.

(R. 924–25.) This analysis of the Plaintiff's RFC accounted for even nonsevere limitations and was appropriate.

In part of her brief, the Plaintiff argues that the ALJ ignored the AC's remand order when he incorporated by reference his analysis of the opinions of Dr. Freeman, Dr. Edquist, and Dr. Halstead, which were included in his prior decision. However, an ALJ's credibility determination is not automatically flawed if it incorporates a prior decision's findings.[3] Despite the Plaintiff's arguments to the contrary, the Court is satisfied that the ALJ thoroughly considered all of these doctors' opinions and weighted them based upon

---

[3] The Plaintiff's relies on *Oliver v. Colvin*, No. 12-CV-400, 2014 WL 941820 (W.D. Wis. Mar. 11, 2014), to argue that incorporation of a prior decision's findings is grounds for automatic reversal, but the Court could not locate any support in *Oliver* for such a proposition.

the evidence in the record in order to make his RFC determination. Accordingly, the ALJ "explain[ed] [his] decision in such a way that allows [the court] to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). This Court does substitute its judgment for that of the ALJ's.

Next, the Court turns to the ALJ's credibility determinations. An ALJ's credibility determinations are entitled to special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), so long as the ALJ still "build[s] an accurate and logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks omitted); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements"). The regulations and SSR 96-7p set forth the Agency's policy for evaluating a claimant's symptoms and assessing the credibility of her statements.[4]

The Plaintiff argues that it was improper for the ALJ to disregard her own subjective testimony about her symptoms for the sole reason that there was no objective medical evidence in support. But this mischaracterizes the record. The ALJ did base his adverse-credibility determination as to the Plaintiff's statements about her mental symptoms on additional evidence in the record—the Plaintiff's sister's statements and an assessment of Dr. Link's opinion. *Prochaska*, 454 F.3d at 738 ("SSR 96-7p instructs that when 'determining the credibility of the individual's statement, the adjudicator must consider the entire case record . . . .'"). The Plaintiff

---

[4] Although SSR 96-7p governs this case, SSR 16-3p clarifies SSA's existing policy by explicitly stating that an ALJ need not discuss all of the regulatory factors that he considers, except as he finds them pertinent to the case. 2016 WL 1119029, at *7 ("If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case").

pressed a similar argument as to the ALJ's adverse-credibility determination regarding her own statements about her physical limitations. Specifically, the Plaintiff claimed that the ALJ ignored Dr. Halstead's objective findings, which were "a basis for Plaintiff's complaints of pain," and the Plaintiff's daughter's "testimony regarding her need to frequently elevate her legs while sitting." (Pl.'s Br. 23.) But the Court is only empowered to overturn the ALJ's credibility determinations when they are "patently wrong." *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The Court cannot say that any of the aforementioned credibility determinations qualified as such.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

SO ORDERED on February 1, 2017.

                                         s/ Theresa L. Springmann
                                         THERESA L. SPRINGMANN
                                         UNITED STATES DISTRICT COURT